## MARTIN et al. v. SOUTHERN FURNITURE CO., Inc.
### No. 1279.

Court of Appeal of Louisiana. First Circuit.

Jan. 22, 1934.

Robt. R. Stone, of Lake Charles, for appellant.

Braden & Plauche, of Lake Charles, for appellees.

LE BLANC, Judge.

This is a suit in damages for the value of certain articles of furniture alleged to have been forcibly repossessed and for an unlawful entry of the plaintiff's home for the purpose of repossessing the furniture.

The articles taken consisted of a phonograph which cost originally $99.50 and a linoleum rug which cost $10. These pieces had been bought by Maybelle Hayes Martin before she was married to Otis Martin, and therefore constituted her separate property. The suit is brought in the name of both her husband and herself; the purpose of his demand being to vindicate and recover for the rights of the community of which he alleges himself to be the head and master. Judgment is prayed for in the wife's name for the full value of the property taken, that is, the sum of $109.-50, and in the name of the husband as master of the community in the sum of $500. Of the latter amount, $250 is demanded as damages for defendant's malicious and wrongful entry of the plaintiffs' home and $250 for humiliation, loss of time and worry, and expenses incurred in endeavoring to recover the property alleged to have been wrongfully taken.

The defense is that there was no unlawful entry in the home of petitioners, and that the property repossessed was taken with the consent and approval of Maybelle Martin, the owner thereof, after she had stated to defendant's agent that she could not pay the balance claimed to be due thereon. In a supplemental answer the defendant reconvened and asked for judgment against plaintiff Maybelle Martin in the sum of $23.70, the balance alleged to be due by her on the furniture.

The district judge awarded Maybelle Martin the sum of $75.00, being the value, as found by him, of the furniture taken by defendant against her will, and disallowed damages for an unlawful entry, as he held there had been none. He also rejected the demands of Otis Martin on the ground that, the property being the separate property of his wife, the community was without interest. He dismissed defendant's reconventional demand on the ground that it arose out of a contract, whereas plaintiff's suit was based on tort, and, as both parties were domiciled in the same parish, the demand could not properly be brought in reconvention. Code of Practice, art. 375. It may be stated here that the defendant, through counsel, acquiesced in that part of the judgment which dismissed the reconventional demand. It took this appeal from the judgment in favor of Maybelle Martin. Otis Martin did not appeal, and, as the right of Maybelle Martin to recover the value

of her property which she claims to have been forcibly taken from her is not questioned, as a matter of law, the only issue before this court may be said to be one arising from the facts in the case as to whether there was a forcible taking of her furniture by the defendant through its agents, and, if there was, Is the amount decreed by the district judge the proper value to place on the two articles taken?

The phonograph was purchased by Maybelle Martin from the defendant on August 17, 1929. The date of purchase of the linoleum rug is not stated, but we understand that both purchases were made either at or about the same time. She was given credit for $16.95 on the phonograph, and, assuming that she did not pay anything on the purchase of the rug, she owed a balance of $92.55. She made payments regularly and consistently, as appears from the number of receipts produced and filed in evidence by her. Defendant claimed there was a balance due by her, and that, as she had not paid anything on account for eight months and they were unable to locate her, when they finally succeeded in finding her, they sent one of their agents with a truck to see if they could secure the return of the articles. Right here we may state that that allegation in defendant's answer and testimony of their witnesses in support of it appears a bit inconsistent with the fact that as late as July, 1931, they gave her a receipt for a payment she made, and her testimony is positive, and not contradicted, that she has lived at the same home from which the furniture was taken since she was married in September, 1930. She lived only a few miles from Lake Charles out in the country, so apparently defendant must not have made serious efforts to locate her or collect further from her, if at all, and she therefore was justified in believing that she had paid them in full, if indeed she had not done so.

It was in March, 1932, that defendant sent their agent in a truck, accompanied by two negroes, to plaintiff's house, with the purpose, so it is stated, of endeavoring to collect something further on the balance they claimed or else try to secure the return of their property. The agent defendant sent is named Schepp. His testimony is to the effect that all was very quiet and agreeable, and we might infer from it that plaintiff was rather pleased to get rid of "the junk," as he says she called it. His testimony is corroborated to a great extent by that of Eldridge Loeb and Dennie Martin, the two negro helpers who were with him on the truck. These two witnesses did not go into the house at first with Schepp, but were called by him when he was ready to remove the articles so as to load them on the truck. They did not hear all the conversation, but testify that they heard no protest on the part of Maybelle Martin, and that she did refer to the pieces they removed as "old junk." It is doubtful whether these two witnesses heard all they say they did, for, as we understand the testimony of all three, Schepp did not call them from the truck until he was ready to have them take the furniture from the house, and it is very probable that most of his conversation with Maybelle Martin, if not all, had ended. Maybelle Martin positively contradicts the testimony of all three, and she is supported in part of her testimony by that of Lucinda Jones and Joseph Pitre, both of whom lived in the same house with her. She says that she protested, and from her testimony we would think very earnestly, against giving up the two articles of furniture as she contended from the very beginning that she had paid for them in full. When she saw that her protest was unavailing, she says that she cried. Lucinda Jones says that she did not hear the conversation between the plaintiff and Schepp, but she is positive that plaintiff was crying, and that when Schepp ordered his helpers to remove the phonograph she asked them not to take it. The testimony of this witness impresses us as being truthful. Had she been fabricating, she might as well have said that she heard all the conversation that took place between the parties. Joseph Pitre also testified in behalf of plaintiff, and stated that she begged them not to take the furniture, insisting that she had finished paying for it. This witness is plaintiff's brother, and an attempt was made to discredit his testimony by trying to show through Schepp and the two helpers that he was not present. It is significant, however, that his testimony as to how the rug was taken up from the floor is exactly the same as that of the helper who took it up, and, of course, it was given before the latter testified.

Shortly after defendant's truck had left with the articles taken from her house, Maybelle Martin and her brother rode to Lake Charles in a wagon to see her husband about what had happened, and together they went to see the manager of the defendant company to try to convince him, with their receipts, that she did not owe anything further and to demand the return of her property. This interview was followed by at least two more of the same nature. This, in our opinion, is not the action of one who would have been so acquiescent as defendant would have us believe she was, in giving up her property, and is rather convincing proof that she did protest and object to their taking her property from her home.

We are satisfied from the evidence that, whether plaintiff owed a balance or not to the defendant, she was honestly of the opinion that she had paid her account in full, and that this belief served as the basis on which she protested and objected to letting her property be removed from her house. The district judge did not place any reliance on

the testimony of the defendant's witnesses, and severely condemned the agent's action in taking this negro woman's furniture in her presence and over her protest. We agree with him in his condemnation of such action, and find that he has properly awarded her the sum of $75 as the value of her property of which she has been deprived. That, it is noted, was the only item of damage demanded by her. Defendant contends that the amount allowed is excessive in view of the decreased value of phonographs brought about by the popularity of the radio. But we believe that that is aside of the question here. Plaintiff had paid considerably more than that for the phonograph, and its value to her was not at all the same as to a dealer in those articles. She had no radio in her home, so, as to her, the popularity of that modern instrument could make no difference in so far as the value of her phonograph was concerned. With regard to the linoleum rug, it may be said that its three years' service may have diminished its value, but it must still have had quite a bit of service in it, and undoubtedly, as shown by defendant's own witnesses, was in use at the time it was removed. Reference is made to the fact that it was torn, but it is shown to have been torn by the two negro helpers when they removed it from under a bed in the house.

The judgment appealed from is found to be correct in every respect, and it is hereby affirmed.